George N. Meissner v. Commissioner.
Meissner v. Commissioner
Docket No. 2404.
United States Tax Court
1944 Tax Ct. Memo LEXIS 184; 3 T.C.M. (CCH) 667; T.C.M. (RIA) 44259; July 14, 1944
*184 Ralph B. Graham, Jr., Esq., for the petitioner. John E. Marshall, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1940 of $3,675.70. The only question in issue is whether the respondent erred in the disallowance of the deduction from gross income of $6,271.87 representing 50 percent of a capital loss sustained on an investment in stock of Arcturus Radio Tube Co., which the petitioner contends became worthless during the taxable year. The facts have all been stipulated. [The Facts] The petitioner is a resident of St. Louis, Missouri. He filed his income tax return for 1940 with the collector of internal revenue at St. Louis. In 1929 the petitioner purchased for the sum of $25,087.50. 500 shares of no par value common capital stock of Arcturus Radio Tube Co., a corporation organized under the laws of Delaware (hereinafter sometimes called "Arcturus"). In 1932 Arcturus changed its outstanding common capital stock from no par value to a par value of $1 per share and increased the number of outstanding shares from 600,000 to 1,200,000. Petitioner did not surrender his *185 certificates for 500 shares originally acquired by him in 1929 until December, 1938, at which time he sold 500 shares of $1 par value stock and received certificates for the remaining 500 shares of such stock. The 500 shares of stock retained had a cost basis to petitioner of $12,543.75. In his income tax return for 1940 petitioner claimed that this stock had become worthless during the calendar year and that he had sustained a capital loss from his investment in the stock. In his return he deducted one-half of the amount of the loss. The deduction was disallowed by the respondent in the determination of the deficiency. On December 13, 1937, Arcturus filed a petition in the United States District Court, District of New Jersey, for reorganization under section 77B of the Bankruptcy Act. Thereafter an order was made approving the petition and continuing the company as debtor in possession. Arcturus sustained losses from operation during the years 1937, 1938 and 1939. On February 19, 1940, a stockholders' protective committee filed with the court what was labeled a plan of reorganization but what in effect was a proposal to liquidate all of the assets of the debtor by sale, and to distribute *186 the proceeds among the creditors and any balance remaining to the stockholders. In accordance with the approved plan a new corporation was organized in 1940 under the laws of New Jersey named Arcturus Radio Tube Corporation (hereinafter sometimes called "corporation"), with an authorized capital stock of 100 shares without stated or par value. This corporation was organized for the purpose of liquidating the assets of the debtor, paying its liabilities and distributing the remaining proceeds, if any, to the stockholders of the debtor. A voting trust was created in 1940 to endure for a period of three years. Three voting trustees were empowered to vote the stock of the corporation and to take whatever action they deemed advisable in the interests of the creditors and stockholders in the complete liquidation and winding up of the business and affairs of the debtor. Upon completion of the organization of the corporation and the deposit of its capital stock under the voting trust agreement, the corporation, as of July 31, 1940, acquired all of the property, assets and franchises of the debtor free and clear of all encumbrances of creditors and stockholders of the debtor, subject, however, *187 to any liens for real estate taxes and the lien on a mortgage held by the Reconstruction Finance Corporation. For the purposes of the plan the creditors and stockholders of the debtor were classified in the following order of priority: (a) Reconstruction Finance Corporation
(b) Expenses and costs of administration of the debtor (c) Claims entitled to priority under the provisions of the Bankruptcy Act arising prior to the inception of the reorganization proceedings (d) Claims of unsecured creditors (e) Claims of stockholders The voting trustees took over the management of the debtor on August 1, 1940. A report by the trustees covering the period August 1, 1940, to August 31, 1941, and the accountants' report covering audit of the books and records for that period disclosed that on August 31, 1940, the book value of the assets of the debtor exceeded the liabilities, including trusteeship liabilities, by the amount of $639,309.13; and that during the period from August 31, 1940, to August 31, 1941, all fixed assets and inventories of the debtor had been disposed of and all preferred and secured liabilities, except certain trusteeship liabilities and unsecured liabilities, had *188 been paid. There remained on August 31, 1941, total assets having a book value of $150,325, of which $112,086.30 was cash. Trusteeship liabilities remaining unpaid on this latter date amounted to $4,754.85, and unsecured liabilities amounted to $119,754.82, leaving a ret capital of $25,815.33. During the period from August 31, 1941, to December 31, 1942, all assets of the debtor were liquidated and all creditors whose claims were allowed had been paid 100 percent. There remained at the close of the year 1942 in the hands of the trustees subject to the payment of administration costs the sum of $47,072.30. Total expenses paid and incurred during the period August 1, 1940, to August 31, 1941, amounted to $149,015.43. Losses on liquidation of assets amounted to $519,627.11, and profits on settlement of liabilities amounted to $55,148.74. Thus, the net reduction in the equities of the stockholders of the debtor during this period amounted to $613,493.80. On January 2, 1943, a final report was made to the stockholders of the debtor reflecting that all of the assets of the debtor had been liquidated; that all creditors whose claims were allowed had been paid 100 percent; and that there *189 remained in the hands of the trustees subject to the payment of administration costs $47,072.30. By a decree of the court entered February 18, 1943, all but $72.30 of this amount was ordered paid to the trustees and others for services performed in the liquidation of the debtor corporation. The question presented is whether upon the stipulated facts the petitioner's investment in the 500 shares of Arcturus Radio Tube Co., the debtor, became worthless during the calendar year 1940. If it did, the petitioner is entitled to the deduction from his gross income of 1940 of $6.271.87 or one-half of his total investment. The petitioner considered that his shares became worthless in 1940. The respondent points to the fact that the book value of the assets of the debtor corporation on August 31, 1940, exceeded liabilities by $639,309.13. This would indicate that the book value of the shares at that time was approximately 53 cents a share. The respondent further points out that on August 31, 1941, after all fixed assets and inventories of the debtor corporation had been disposed of and all preferred and secured liabilities had been paid, there was a net capital remaining of $25,815.33. To *190 his mind this indicates clearly that the stock did not become worthless in 1940. The parties have not stipulated that the stock of Arcturus became worthless in 1940, nor has petitioner offered any evidence that there was no market for the stock during that year. He submits that the facts of record show that the stock became worthless in 1940. He particularly relies upon the point that in 1940 the court ordered a liquidation of the corporation for the purpose of raising funds to pay off creditors, any balance remaining to be distributed to the stockholders. In our opinion these facts do not show worthlessness of the stock in 1940. Conceivably the assets of the corporation could have been liquidated at a price to enable the liquidator to pay a liquidating dividend. It was not until 1943 that it was definitely determined that no liquidating distribution would be made to the stockholders. We hold that the petitioner has not borne his burden of proof of overcoming the prima facie correctness of the respondent's determination that the stock did not become worthless in 1940. Decision will be entered for the respondent.